CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

FEB 01 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| INNOTEC LLC<br><br>    Plaintiff,<br><br>v.<br><br>VISIONTECH SALES, INC.,<br><br>    Serve: Richard Perrault<br>          Registered Agent<br>          92A Industrial Way<br>          Troy, VA 22974<br><br>VISIONTECH SALES GROUP HONG KONG LTD;<br><br>    Serve: Richard Perrault, Corporate Officer<br>          92A Industrial Way<br>          Troy, VA 22974<br><br>and<br><br>RICHARD LLOYD PERRAULT<br><br>    Serve: 1108 Charterhouse Court<br>          Keswick, VA 22947 | Case No. 3:17CV00007 |

## COMPLAINT

Plaintiff, Innotec LLC ("Innotec"), brings this action against Defendants, Visiontech Sales, Inc. ("VSG"), Visiontech Sales Group Hong Kong Ltd. ("VSG HK"), and Richard L. Perrault ("Perrault") for monetary and other damages and legal relief on the grounds set forth herein.

## NATURE OF THE ACTION

1.      This is an action for breach of contract for the sale of goods, and in the alternative, for unjust enrichment. This is also an action for breach of contractual non-disclosure and exclusivity requirements. This action seeks monetary damages and other relief.

## PARTIES

2.      Innotec is a Colorado Limited Liability Company, and maintains its principal place of business in Lafayette, Colorado. Innotec is a manufacturer and supplier of electrical and mechanical components.

3.      Defendant VSG is a Virginia corporation and maintains its principal place of business in Troy, Virginia. VSG is a purchaser of electrical and mechanical components. At all times relevant to the matters set forth herein, VSG was a purchaser of the subject goods from Innotec.

4.      Defendant VSG HK is, upon information and belief, a foreign corporation that is located and maintains its principal place of business in Troy, Virginia. Upon information and belief, VSG HK is a subsidiary or affiliate of VSG.

5.      Defendants VSG and VSG HK are also, upon information and belief, alter-egos of each other. For example, VSG HK is believed to be engaged in the same business as VSG, purchasing the same type of products, and selling the same type of products, including to VSG customers. VSG HK operates from the same office in Troy, Virginia as VSG. Upon information and belief, Mr. Richard L. Perrault, a resident of the Commonwealth of Virginia, is the founding member and chief executive officer of both VSG and VSG HK, and directs both companies from the same office in Troy, Virginia. Further, upon information and belief, VSG and VSG HK

employ the same management and key employees, tradenames and trademarks, as well as the same mailing address, physical addresses, email addresses, and other administrative assets.

6. Defendant Richard L. Perrault ("Perrault") is a resident of the Commonwealth of Virginia. Upon information and belief, Perrault is the founder, chief executive, and owner of both VSG and VSG HK.

## JURISDICTION AND VENUE

7. The matters asserted in Paragraphs 1 through 6 are incorporated herein as if set forth in full.

8. There is complete diversity of citizenship among the parties to this action, and the amount or value in controversy exceeds $75,000.00, exclusive of interest and costs. Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

9. This Court has personal jurisdiction over the Defendants pursuant to Va. Code. § 8.01-328.1, because each Defendant is either domiciled in the Commonwealth of Virginia, incorporated in the Commonwealth of Virginia, located in the Commonwealth of Virginia, or has transacted business in the Commonwealth of Virginia, and transacted such business in the Commonwealth of Virginia in connection with the matters that are the subject of this litigation.

10. Venue is proper in this district and in this division pursuant to 28 U.S.C. § 1391 (b), and Rule 2 (b) of the Rules of the U.S. District Court for the Western District of Virginia, as the Defendants are located in this judicial division, and because a substantial part of the events or omissions giving rise to the claims occurred in this division.

## FACTS

**The Mutual Non-Disclosure Agreement.**

11. The matters asserted in Paragraphs 1 – 10 above are incorporated herein as if set forth in full.

12. In anticipation of a continued business relationship, Innotec and VSG entered into a Mutual Non-Disclosure Agreement dated February 14, 2013 (the "MND Agreement"). Included among the material terms and conditions of the MND Agreement are the following:

    a) The MND Agreement is binding on VSG, as well as its affiliates and subsidiaries;

    b) The MND Agreement is to protect and facilitate the exchange of confidential and other business and product information that Innotec desires to treat as confidential, for the purpose of advancing discussions for the sale of goods and services by Innotec to VSG;

    c) Confidential Information is afforded the broadest application possible;

    d) The receiving party, *i.e.*, VSG, is to keep in the strictest confidence and trust all Confidential Information, and shall take all reasonable safeguards to prevent disclosure;

    e) The MND is effective for a minimum initial term of one year; thereafter, any party may terminate the agreement for any reason or for no reason, upon thirty (30) days written advance notice to the other party;

    f) The receiving party may not determine or discover any Confidential Information by any means such as disassembly, reverse engineering, or any other means except as may be authorized in advance by the Disclosing Party;

    g). The Company (VSG, its affiliates and subsidiaries) shall not circumvent Innotec by purchasing product or equipment directly from Innotec's original manufacturer or supplier without first receiving written consent of Innotec.

13. No party has taken action to terminate the MND. A true copy of the MND Agreement is attached hereto as Exhibit A.

**The Exclusivity Agreement and related purchases.**

14. Innotec and VSG also entered into an "Exclusivity Agreement" dated March 28, 2013 (the "Exclusivity Agreement"). In the Exclusivity Agreement, VSG, as "Buyer," and Innotec, as "Seller," agreed to enter into an exclusive agreement for the purchase of all Vivoplay Charger Adapters. The agreement provides that during the exclusivity period, defined as March 28, 2013 through March 28, 2020, VSG was required to purchase exclusively from Innotec, and Innotec was required to sell, all Vivoplay Charger Adapters to be required by VSG. The terms of such purchases are to be in accordance with the Seller's quotation dated March 28, 2013. Payment is required by wire or by check to the order of Innotec as further set forth therein. Should the Buyer fail to pay for the goods when due, the Seller has the option to treat such failure as a material breach of the Exclusivity Agreement, and seek legal remedies.

15. The Exclusivity Agreement also provides that in the event of a dispute related to the agreement, the unsuccessful party shall pay to the successful party, in addition to all sums that either party may be called on to pay, a reasonable sum for the successful party's attorney fees. A true and correct copy of this Exclusivity Agreement is attached hereto as Exhibit B.

16. In reliance on the Exclusivity Agreement, VSG made two orders of Vivoplay Charger Adapters from Innotec. Innotec filled such orders, and delivered such goods to VSG, and they were accepted by VSG without protest and are conforming in all material respects. Innotec has in turn delivered two invoices for payment, invoices No. 3934 and No. 3956, to VSG. True and correct copies of these two Invoices are attached hereto as Exhibit C.

17. Notwithstanding the above facts and obligations, VSG has failed to make payment of the invoices, and is therefore in breach of contract, including the terms of the Exclusivity Agreement.

**VSG purchases pursuant to separate purchase orders.**

18. During the period of September 12, 2014 through June 10, 2016, VSG ordered electrical and mechanical components from Innotec by submitting purchase orders to Innotec. Innotec filled these orders, and VSG received and accepted each of these shipments without objection. Innotec has sent proper invoices for such purchases to VSG for payment, and such invoices are past due and unpaid.

19. These purchases were made by Innotec first submitting a quotation to VSG at VSG's request, specifying the product and providing the terms that would control the order, including price, payment terms, shipping and non-cancellation of orders. In each case, VSG responded by submitting a purchase order corresponding to the terms of Innotec's quotation. Innotec then filled the order and sent an invoice with the shipment of the product. By way of example, a quotation, purchase order, and invoice is attached collectively hereto as Exhibit D.

20. In the case of each of these orders, VSG accepted the goods shipped and delivered, without protest or objection, and used such goods in its ordinary course of business, including the resale of such products to its customers. However, VSG has failed to make payment for the orders in accordance with the invoices.

21. Innotec addressed approximately $618,000 in unpaid and overdue invoices on May 3, 2016 with Mr. Perrault of the VSG companies. Mr. Perrault acknowledged in response that it owed past-due balances for goods ordered and accepted by VSG, and agreed to come up

with a payment schedule. VSG provided a second email to Innotec that same day, agreeing to pay $100,000 by May 6, and another $100,000 payment by May 13. Copies of their e-mails are attached collectively as <u>Exhibit E</u>.

22. Mr. Perrault made these two payments. However, no payments have been made by VSG to Innotec since.

23. On May 17, 2016, Innotec sent another email to VSG's VP of Operations, requesting additional payment of at least $100,000, by May 20. At that time, VSG had overdue invoices totaling $528,000. This email was not responded to. On June 6, 2016, Innotec sent another email to VSG to address its non-payment. At this point, the overdue balance had risen to $853,000. VSG did not reply to this email.

24. On June 8, 2016, Innotec once again emailed VSG, requesting a response to its previous emails. Finally, Mr. Perrault responded, requesting an in-person meeting to discuss payment. The meeting was held on June 14 at Mr. Perrault's office in Troy, Virginia. At this meeting, the parties reached an agreement regarding the payment of the past-due balance (the "Payment Plan"). Mr. Perrault agreed that VSG would pay all invoices overdue as of June 14, 2016, to Innotec on June 15, 2016. The total amount of overdue invoices to be paid by VSG had reached $1,117,215.69. A copy of this Payment Agreement is attached as <u>Exhibit F</u>. In the case of every past due invoice, Innotec had shipped conforming product in accordance with a purchase order sent by VSG, which was accepted by VSG without protest or complaint, and used by VSG to fill its own orders and sales to its own customers.

25. On June 15, Innotec sent an email to Mr. Perrault, reminding him to make payment that day as agreed. However, in breach of the Payment Agreement, and in continued

breach of all invoices, VSG never made the required payment to Innotec for the amount of the overdue balance, nor provide any response to Innotec's June 15 email.

26. On June 16, 2016, Mr. Ting emailed Mr. Perrault, and informed him that as a result of VSG's multiple failures to render payment due, Innotec was terminating the June 14 Payment Plan, and that VSG must pay Innotec immediately for all overdue balances.

27. As of January 27, 2017, VSG owes Innotec $2,699,435.39 for components ordered, shipped, and received by VSG, as well as items properly withheld after demanding payment. A true and correct copy of the total balance owed is attached as <u>Exhibit G</u>. This figure includes $1,646,440.70 in open, outstanding invoices for goods ordered by VSG, shipped, and accepted by VSG without protest or complaint. This figure also includes $771,674.25 due for non-cancellable custom goods ordered by VSG, which were substantially filled by Innotec, and are being held pending appropriate assurance from VSG that it will cure its breaches and perform its obligations of payment.

28. The amounts due Innotec also include a 2% monthly charge for any overdue balances. As of January 27, 2017, such amounts totaled $281,320.44.

29. Innotec reserves the right to add or amend such facts upon the completion of discovery on this case.

### COUNT I- BREACH OF CONTRACT BY VSG –
**For the sale of goods pursuant to the Exclusivity Agreement**

30. The facts asserted in Paragraphs 1 through 29 are incorporated herein as if set forth in full.

31. The above actions by VSG constitute a material breach of contract, and Innotec has sustained direct monetary damages as the direct and proximate result thereof.

8

WHEREFORE, Innotec seeks judgment in an amount not less than $99,098.52, consisting of $39,936.00 due on Invoice No. 3934, $41,932.80 due on Invoice No. 3956, 2% fees for overdue unpaid balances as of January 27, 2017, such amount being $17,229.72; pre-judgment interest from the date of each invoice until paid, post-judgment interest as provided at law, its attorneys' fees incurred herein, and such other relief as may be provided at law or equity.

### COUNT II – BREACH OF CONTRACT BY VSG – Unpaid invoices for the sale of goods and open purchase orders

32. The facts asserted in Paragraphs 1 through 31 are incorporated herein as if set forth in full.

33. The above actions by VSG constitute a material breach of contract, and Innotec has sustained direct monetary damages as the direct and proximate result thereof.

WHEREFORE, Innotec seeks judgment in an amount not less than $2,600,336.87, consisting of $1,564,571.90 past due on Innotec invoices for goods ordered, shipped, delivered and accepted by VSG without protest or objection; $771,674.25 for non-cancellable custom goods ordered by VSG, assembled and prepared for shipment, in part, and held by Innotec given VSG's anticipatory breach; 2% monthly fees for overdue balances as of January 27, 2017, such amount being $264,090.72; pre-judgment interest from the date of each invoice until paid, post-judgment interest as provided at law, and such other relief as may be provided at law or equity.

### COUNT III- Unjust Enrichment against VSG

34. The facts asserted in Paragraphs 1 through 33 are incorporated herein as if set forth in full.

35. Innotec pleads, in the alternative, that the facts set forth above give rise to an implied contract, where VSG, or its affiliates or subsidiaries, are required to pay Innotec the reasonable value of the goods and services Innotec provided, under the doctrine of unjust enrichment. Under the above facts, Innotec conferred a benefit on VSG, VSG knew of the benefit and should reasonably have expected to pay Innotec for such goods and services, and VSG accepted and retained such goods and services without paying for their value. As a result, Innotec should recover an award of damages amounting to the reasonable value of the goods and services provided, from the party receiving such goods and services, less any compensation actually received.

36. As a result of the foregoing, VSG, its affiliate(s) and subsidiaries have been unjustly enriched and have wrongfully profited at the expense and detriment of Innotec, and will continue to be wrongfully enriched, unless and until Innotec receives the compensation and damages set forth herein.

WHEREFORE, Innotec seeks judgment in an amount not less than $2,699,435.39, consisting of $1,564,571.90 past due on Innotec invoices for goods ordered, shipped, delivered and accepted by VSG without protest or objection; $771,674.25 for non-cancellable custom goods ordered by VSG, assembled and prepared for shipment, in part, and held by Innotec given VSG's anticipatory breach; 2% monthly fees for overdue balances as of January 27, 2017, such amount being $281,320.44; pre-judgment interest from the date of each invoice until paid, post-judgment interest as provided at law, and such other relief as may be provided at law or equity.

## COUNT IV- BREACH OF CONTRACT BY VSG HK

37. The facts asserted in Paragraphs 1 through 36 are incorporated herein as if set forth in full.

10

38. As an affiliate and subsidiary of VSG, VSG HK is equally bound by the MND Agreement.

39. In early 2016, despite the terms and requirements of the MND Agreement, VSG, upon information and belief, and its subsidiary and affiliate, VSG HK, approached and solicited Innotec's original manufacturer and supplier, for the purpose of purchasing product or equipment sold by Innotec directly from Innotec's manufacturer and supplier, without involving Innotec, and without seeking or obtaining written consent from Innotec. Upon information and belief, VSG and/or VSG HK proceeded to purchase such product and equipment, all in violation of the MND Agreement, specifically including Paragraph 7.

40. Such actions were also committed by VSG HK, an affiliate and subsidiary of VSG, which was equally bound by the MND Agreement according to its express terms. Therefore, VSG HK is liable for this wrongful and unlawful conduct.

41. As demonstrated by the facts and matters set forth herein, VSG HK misused and misappropriated Confidential Information of Innotec, including Confidential Information concerning Innotec's products, prices, and business, for its own benefit and to the detriment of Innotec, without the express written consent of Innotec, to procure goods and products provided by Innotec and governed by the MND Agreement, directly from Innotec's manufacturers or suppliers.

42. Such actions constitute a material breach of the MND Agreement, specifically including Paragraphs 2 and 7. Innotec has sustained monetary and other damages as the direct and proximate result thereof.

WHEREFORE, Innotec prays for judgment against VSG HK, in an amount to be proved at trial, its attorneys' fees incurred herein, costs, and such other relief as is available at law or equity.

### COUNT V- PERSONAL LIABILTY AGAINST OWNERS OF VSG AND VSG HK

43. The facts asserted in Paragraphs 1 through 42 are incorporated herein as if set forth in full.

44. Upon information and belief, facts and conditions exist to justify this Court to pierce the corporate veil of VSG and VSG HK, and to find personal liability against their shareholders or members, on one or more of the following grounds:

    a) Separate personalities of these entities and their owners do not practically exist, requisite formalities have not been observed, and adhering to a formal distinction and separation between them would allow injustice to occur. In this fashion, these entities are simply the alter-egos of their owners;

    b) The owners controlled or used these entities to evade legal obligations, perpetuate what is essentially a fraud, commit an injustice, and/or gain an unfair advantage over Innotec;

    c) The entities are unable to satisfy their debts and obligations, and such inability is the result of deliberate undercapitalization and other conscious actions and wrongdoing;

WHEREFORE, upon the entry of a judgment against VSG and/or VSG HK, the Court should pierce the corporate veil of such entity and assess the judgment and liability against the owners, jointly and severally, specifically including Defendant Perrault.

## PRAYER FOR RELIEF

WHEREFORE, Innotec LLC prays for the following relief:

A. Judgment on Count I, against VSG, in an amount not less than $99,098.52; pre-judgment interest until the date of judgment, post-judgment interest at the legal rate, its attorneys' fees incurred herein, costs, and such other relief as is provided at law or equity;

B. Judgment on Count II, against VSG, in an amount not less than $2,600,336.87, consisting of $1,564,571.90 past due on Innotec invoices for goods ordered, shipped, delivered and accepted by VSG without protest or objection; $771,674.25 for non-cancellable custom goods ordered by VSG, assembled and prepared for shipment, in part, and held by Innotec given VSG's anticipatory breach; 2% monthly fees for overdue balances as of January 27, 2017, such amount being $264,090.72; pre-judgment interest from the date of each invoice until paid, post-judgment interest as provided at law, its attorneys' fees incurred herein, and such other relief as may be provided at law or equity; or, in the alternative, Judgment on Count III, against VSG, in an amount sufficient to compensate Innotec the reasonable value of those goods and services it provided, under the doctrine of unjust enrichment, such amount consisting of not less than $2,699,435.39;

C. Judgment on Count IV, against VSG HK, in an amount to be proved at trial, sufficient to compensate Innotec for the direct and proximate monetary and other damages it sustained as a result of VSG HK's breaches of contract; and

D. Judgment to be entered in the above amounts against the owners of VSG and VSG HK, jointly and severally, under the doctrine of piercing the corporate veil, and pursuant to Virginia law as set forth herein pertaining to individual owner liability for judgments against; and

E. Such other relief as is available at law or equity.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues of fact and counts so triable.

Respectfully submitted,

**INNOTEC LLC**

By: _____
Counsel

James C. Cosby, Esquire (VSB No.: 25992)
Sean M. Golden, Esquire (VSB No. 76776)
VANDEVENTER BLACK LLP
901 East Byrd Street, Suite 1600
Post Office Box 1558
Richmond, Virginia 23219
Telephone: (804) 237-8800
Facsimile: (804) 237-8801
jcosby@vanblacklaw.com

4819-2729-5552, v. 1