CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 18 2018

JULIA C. DUDLEY, CLERK
BY: /s/ A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| INNOTEC LLC, | ) |
| Plaintiff, | ) |
| v. | ) |
| VISIONTECH SALES, INC., et al., | ) Civil Action No. 3:17CV00007 |
| Defendants. | ) **MEMORANDUM OPINION** |
| VISIONTECH SALES, INC., | ) By: Hon. Glen E. Conrad |
| Counterclaim Plaintiff, | ) Senior United States District Judge |
| v. | ) |
| INNOTEC, et al., | ) |
| Counterclaim Defendants. | ) |

This case is presently before the court on the defendants' motion to enforce settlement agreement and stay proceedings, and the plaintiff's motion for sanctions. For the reasons set forth below, the defendants' motion will be denied and the plaintiff's motion will be denied without prejudice to renewal.

## Background

### I. The Parties

Plaintiff Innotec LLC ("Innotec") is a Colorado limited liability company based in Lafayette, Colorado that manufactures and supplies electrical and mechanical components. Allen Ting, a Colorado resident, is the managing member of Innotec.

Visiontech Sales, Inc. ("Visiontech") is a Virginia corporation based in Troy, Virginia that purchases electrical and mechanical components. The founder, chief executive officer, and owner of Visiontech is Richard Perrault, a Florida resident. Perrault is also the owner of Visiontech Sales Group Hong Kong, Ltd. ("VSG HK"), a related entity based in Hong Kong.

## II. Procedural History

On February 1, 2017, Innotec filed the instant action against Visiontech, VSG HK, and Perrault, seeking to obtain payment for products ordered from Innotec. The complaint contains five counts: (1) "Breach of Contract" by Visiontech – "For the sale of goods pursuant to the Exclusivity Agreement"; (2) "Breach of Contract" by Visiontech – "Unpaid invoices for the sale of goods and open purchase orders"; (3) "Unjust Enrichment" against Visiontech; (4) "Breach of Contract by VSG HK"; and (4) "Personal Liability against Owners of [Visiontech] and VSG HK." Compl. ¶¶ 30–44, Docket No. 1.

On March 16, 2017, the defendants answered Innotec's complaint, and Visiontech filed a counterclaim against Innotec and Ting. The counterclaim includes four counts: (1) "Breach of Contract"; (2) "Actual Fraud"; (3) "Tortious Conversion of Molds and Tooling"; and (4) "Tortious Interference with Contracts, Business Relationships, and Prospective Economic Advantage." Counterclaim ¶¶ 24–45, Docket No. 10. The counterclaim is the subject of a motion to dismiss that remains pending.

On January 16, 2018, Innotec moved to compel proper and complete discovery responses. That motion and other non-dispositive pretrial matters were referred to United States Magistrate Judge Joel C. Hoppe. By order entered February 12, 2018, Judge Hoppe granted the motion to compel and directed the defendants to respond to the discovery requests at issue no later than February 22, 2018. See Feb. 12, 2018 Order, Docket No. 91.

The defendants did not comply with Judge Hoppe's order. They maintain that compliance is no longer necessary because the parties reached an oral settlement agreement on February 21, 2018, the day before their discovery responses were due. The plaintiff, however, disagrees and contends that no enforceable settlement agreement has been reached in the case. On March 2, 2018, the defendants moved to enforce the alleged oral settlement agreement and stay further proceedings, including discovery, until the court rules on the defendants' motion. That same day, the plaintiff moved for sanctions, including involuntary dismissal of the defendants' counterclaim, based on the defendants' failure to comply with the discovery order. In response, the defendants argue that sanctions are unwarranted because the case has settled.

### III. Facts Relevant to the Purported Settlement Agreement

Throughout this litigation, Innotec and Ting have been represented by James Cosby and other attorneys with the law firm of Vandeventer Black, LLP (collectively, "plaintiff's counsel"). Visiontech, VSG HK, and Richard Perrault have been represented by Michael Whitticar of NOVA IP Law, PLLC ("defense counsel").

On September 15, 2017, plaintiff's counsel filed a proposed joint discovery plan after receiving input from defense counsel. The plan included a provision in which the parties "agree[d] to request a settlement conference to be administered by the Court upon a date mutually agreeable." Discovery Plan ¶ 13, Docket No. 33-2. Judge Hoppe adopted the proposed discovery plan on October 25, 2017.

Initial settlement discussions were conducted through counsel. In the fall of 2017, plaintiff's counsel submitted a settlement demand to defense counsel. The record indicates that defense counsel did not respond to the demand. See Ex. 1 to Pl.'s Resp. to Defs.' Mot. to Enforce Settlement Agreement, Docket No. 108-1.

3

Approximately four months later, on January 25, 2018, defense counsel forwarded a settlement proposal to plaintiff's counsel. In response, plaintiff's counsel noted that defense counsel's clients had not responded to the plaintiff's previous demand. Plaintiff's counsel emphasized that "[w]hen we receive an offer or demand, we respond to it, with whatever view we have at that time." Id. In reply, defense counsel suggested that the attorneys "focus on resolving the case rather than pointing fingers." Id.

There is no evidence that counsel engaged in further settlement discussions, requested a court-administered settlement conference, or sought referral to an alternative dispute resolution resource outside the court as permitted by the local rules. See W.D. Va. Civ. R. 83. Instead, Andrew Flint, a non-attorney "debt negotiator" who was "hired" by the defendants to "assist in the negotiation and settlement of this litigation," attempted to negotiate directly with Ting. Flint Decl. ¶ 2, Docket No. 97-7.

On February 21, 2018, Flint contacted Ting by telephone on multiple occasions. The defendants now maintain that, during those telephone conversions, the parties reached an oral settlement agreement. According to Flint, the parties agreed to the following settlement terms:

> (1) Defendants would pay Innotec, LLC $700,000.00 as an initial settlement payment by Friday, February 23, 2018, and an additional $133,333.00 would be paid monthly for a period of six months.
>
> (2) All claims that were asserted in the pending litigation would be dismissed with prejudice.

Flint Decl. ¶ 3.

On February 23, 2018, plaintiff's counsel advised defense counsel that the deadline for producing additional documents had passed and that the defendants had not complied with Judge Hoppe's order. In response, defense counsel advised plaintiff's counsel via email that "[t]he

4

parties settled this case by oral agreement Wednesday night," and that plaintiff's counsel would "be receiving a written memorialization shortly." Ex. 5 to Pl.'s Resp. to Defs.' Mot. to Enforce Settlement Agreement, Docket No. 108-5. That same day, defense counsel's paralegal forwarded plaintiff's counsel a proposed written settlement agreement and mutual general release ("draft agreement"). The draft agreement contained multiple provisions, including the following:

> 2. Effective Date of This Agreement. The Parties agree that this Agreement will become effective (the "Effective Date") on the date the last signatory to this agreement signs the Agreement.
>
> 3. Settlement Payment. VSG [Visiontech Sales Group, Inc.] and WSG [Worldwide Solutions Group, Inc.] (one or the other) will pay the Innotec Parties $700,000 within three business days of the Effective Date and $133,333 per month beginning on April 1, 2018 for 6 months.
>
> 4. Dismissal of the Litigation With Prejudice. The Parties agree to execute, and Innotec agrees to file, within five (5) business days of Innotec's receipt of the $700,000 initial Settlement Payment, a consent order to dismiss the Litigation as settled with prejudice.
>
> 5. Cancellation of Previous Agreements. Upon execution of this Agreement, the Parties agree and acknowledge that all previous agreements between the Parties, unless otherwise set forth herein, including but not limited to the Contracts, purchase orders and invoices asserted or alleged in the Litigation, are hereby cancelled and terminated. Each and every provision within those Contracts, purchase orders or invoices, or any other agreements or arrangements between the Parties, are null and void, of no further force and effect, and the Parties are excused from further performing thereunder, except as otherwise stated in this Agreement.
>
> . . . .
>
> 10. The Innotec Parties will convey the disputed molds, tooling and equipment with the Innotec Suppliers to WSG and shall inform the Innotec Suppliers that WSG has the right to use them and to buy product from the Innotec Suppliers.

5

> . . . .
>
> 12. The Innotec Parties will not solicit or do business with the customers of the Visiontech Parties for a period of two years from the time of the Effective Date of this Agreement.
>
> 13. Advice of Counsel. In entering into this Agreement, each Party represents that (a) it has relied upon, or has had the opportunity to rely upon, the advice of its respective attorneys, who are the attorneys of its own choice, concerning the legal consequences of this Agreement, (b) the terms of this Agreement have been completely read and explained to each Party by its respective attorneys or it has had the opportunity to have the Agreement explained by its own attorney, and (c) the terms of this Agreement are fully understood and voluntarily accepted by each and every Party.
>
> . . . .
>
> 23. Interpretation and Construction. The Agreement shall be deemed to have been jointly prepared by the Parties' attorneys. Any ambiguity or uncertainty that may exist regarding any language of this Agreement shall not be interpreted for or against either Party . . . .

Draft Agreement 1–5, Docket No. 97-1. The draft agreement also included broad mutual release provisions, under which each side would release the other "from all claims, demands, obligations, actions and causes of action, or causes of liability, rights, and offset rights, whether at law or in equity, whether known or unknown, whether in tort or in contract, suspected or unsuspected, matured or unmatured, discovered or undiscovered, asserted or unasserted, . . . including, but not limited to, all claims arising out of, relating to, or connected with the Contracts, the purchases orders and invoices, or the Litigation." Id. at 2–3.

In a reply email dated that same day, plaintiff's counsel "disagree[d]" with the assertion that the case had settled and "declined" the proposed settlement agreement. Ex. 5 to Pl.'s Resp. to Defs.' Mot. to Enforce Settlement Agreement. Plaintiff's counsel also requested that defense counsel direct all communications to Innotec and Ting through plaintiff's counsel.

6

## Discussion

### I. Defendants' Motion to Enforce Settlement Agreement

"Court-facilitated settlements are an important aspect of the judicial process and of its purpose in providing an orderly and peaceful resolution of controversies." Hensley v. Alcon Labs., Inc., 277 F.3d 535, 540 (4th Cir. 2002). To this end, "district courts have inherent authority, deriving from their equity power, to enforce settlement agreements." Id. In determining whether a settlement agreement has been reached, the court must "look[] to the objectively manifested intentions of the parties." Moore v. Beaufort Cnty., 936 F.2d 159, 162 (4th Cir. 1991). A court may enforce a settlement agreement only after "it concludes that a complete agreement has been reached and determines the terms and conditions of that agreement."[1] Hensley, 277 F.3d at 540. "Absent agreement, a party may demand and receive full judicial process, including a trial, for the resolution of legitimate disputes." Id.

In this case, the defendants contend that Ting entered into a binding oral settlement agreement during his phone conversations with Flint. In response, Innotec and Ting maintain that Ting and Flint only discussed what amount of money Ting would agree to accept and did not discuss other settlement terms that Innotec and Ting would agree to or require as part of a final settlement agreement. Innotec and Ting further contend that Ting's agreement to a particular sum of money was subject to the execution of a written agreement prepared by counsel. For the

---

[1] Where there is a substantial factual dispute over the existence or terms of a settlement agreement, the court cannot summarily enforce the agreement but must instead conduct an evidentiary hearing. See Hensley, 277 F.3d at 540–541. "However, where the parties failed to agree on the material terms . . . , and where the court enforces no settlement agreement, no evidentiary hearing is required." Tran v. Novo Nordisk Pharm. Indus., Inc., No. 5:14-cv-00254, 2016 U.S. Dist. LEXIS 51623, at *22 (W.D.N.C. Apr. 18, 2016). For the reasons set forth below, the record conclusively establishes that the defendants are not entitled to enforcement of the alleged oral settlement agreement. Accordingly, no hearing is required.

7

following reasons, the court declines to enforce the alleged oral settlement agreement and will therefore deny the defendants' motion.[2]

### A. Flint's ex parte settlement negotiations were not annexed by the court.

Under the Alternative Dispute Resolution Act of 1998 ("ADR Act"), each federal district court is required to "authorize, by local rule adopted under section 2071(a), the use of alternative dispute resolution processes in all civil actions," and to devise and implement its own alternative dispute resolution program. 28 U.S.C. § 651(b). The Act further provides that "[e]ach district court that authorizes the use of alternative dispute resolution processes shall adopt appropriate processes for making neutrals available for use by the parties for each category of process offered." 28 U.S.C. § 653(a). "For this purpose, the district court may use, among others, magistrate judges who have been trained to serve as neutrals in alternative dispute resolution processes, professional neutrals from the private sector, and persons who have been trained to serve as neutrals in alternative dispute resolution processes." 28 U.S.C. § 653(b).

In accordance with the ADR Act, the Western District of Virginia enacted Local Civil Rule 83, which provides, in pertinent part, as follows:

> This Court shall offer alternative dispute resolution to all parties in every civil case. Mediation shall be the common and preferred means of alternative dispute resolution. Other means of alternative dispute resolution shall be made available by this Court upon request of all parties, except in those cases in which the alternative form may be prohibited by statute.

W.D. Va. Civ. R. 83(a). The rule permits parties to request that a case be referred to "an alternative dispute resolution resource outside the Court." W.D. Va. Civ. R. 83(c). "In all other cases, a United States district judge or magistrate judge shall serve as the neutral when the matter

---

[2] In light of the court's decision, the subpoenas issued to Flint and his company by Innotec will be deemed withdrawn and the related motion to quash subpoenas will be denied as moot.

is designated by the presiding judge for alternative dispute resolution." Id. Importantly, the rule further provides that "[t]he court will not assist in the enforcement of any agreement, settlement, or fee arrangement from any alternative dispute resolution process which is not annexed by the Court." W.D. Va. Civ. R. 83(g). "In all other situations, the parties may invoke any of the Court's traditional enforcement mechanisms." Id.

As indicated above, the proposed discovery plan, approved on October 25, 2017, includes a provision in which the parties agreed to "request a settlement conference to be administered by the Court upon a date mutually agreeable." Discovery Plan ¶ 13. Rather than following this approved course of conduct, the defendants hired their own "debt negotiator," who bypassed plaintiff's counsel and engaged in ex parte settlement negotiations with Ting. In the court's view, such tactics on the part of the defendants are, at a minimum, troubling and fall well beyond the scope of alternative dispute resolution practices and processes countenanced by the local rule.[3] Because the purported settlement agreement was not procured through a court-annexed process, the court is of the opinion that the defendants' motion is subject to denial on that basis alone. See W.D. Va. Civ. R. 83(g); cf. Beazer East, Inc. v. Mead Corp., 412 F.3d 429, 434–37 (3d Cir. 2005) (holding that enforcement of an alleged oral settlement agreement was barred by a local appellate rule requiring that any agreement be reduced to writing); World Igbo Congress Inc. v. Nwaguru, No. 4:14-cv-03213, 2016 U.S. Dist. LEXIS 64563, at *8 (S.D. Tex. May 17, 2016) (declining to enforce an alleged agreement for the results of a mediation to be binding where the parties failed to comply with the requirements of the applicable local rule).

---

[3] While the plaintiff argues that Flint potentially violated state rules prohibiting the unauthorized practice of law, the court ultimately finds it unnecessary to decide this issue.

## B. There is no enforceable settlement agreement between the parties.

Alternatively, the court concludes that there is no enforceable settlement agreement between the parties.[4] First, the objective evidence in the record indicates that the parties did not intend to be bound until a settlement agreement was reduced to writing, reviewed by counsel, and signed by the parties. Although a contract can be formed before there is an official document memorializing its terms, if the parties "do not intend to be bound until a formal contract is prepared, there is no contract." Dunkin' Donuts v. Lavani, No. 95-2072, 1996 U.S. App. LEXIS 11870, at *7 (4th Cir. May 24, 1996) (quoting Boisseau v. Fuller, 30 S.E. 457, 457 (Va. 1998)); see also Saza, Inc. v. Zota, No. 3:11-cv-00363, 2012 U.S. Dist. LEXIS 19920, at *16 (E.D. Va. Feb. 16, 2012) (explaining that if "the parties intend to be bound by the written agreement, then the execution of the written agreement is a prerequisite to formation of a contract").

Here, the draft agreement sent to plaintiff's counsel on February 23, 2018 included language indicating that Ting's signature and his ability to review the terms of the agreement with plaintiff's counsel were conditions precedent to the existence or formation of a binding settlement agreement. The draft agreement included an "Advice of Counsel" provision, pursuant to which each party was required to represent that it had received the opportunity to review the agreement with its attorney and obtain the attorney's advice concerning the legal consequences of the agreement. Draft Agreement 4; see also id. 5 ("This Agreement shall be deemed to have been jointly prepared by the Parties' attorneys."). The draft agreement also included an "Effective Date" provision, which provided that "[t]he Parties agree that this Agreement will

---

[4] Courts look to state contract law when the formation or construction of a purported settlement agreement is at issue. See, e.g., Topiwala v. Wessell, 509 F. App'x 184, 186 (4th Cir. 2013) (applying Maryland law to determine whether the parties entered into an enforceable agreement). In this case, neither side engaged in any sort of choice-of-law analysis in their briefs, and instead proceeded under the assumption that Virginia law applies.

10

become effective (the "Effective Date") on the date the last signatory to this Agreement signs the Agreement." Id. at 1. These provisions, taken together, support the conclusion that the parties did not intend to be bound until the written agreement had been reviewed by counsel and signed by all relevant parties. See Saza, 2012 U.S. Dist. LEXIS 19920, at *17 (holding that a similar "effectiveness clause" supported the conclusion that the parties did not intend to be bound until a written document was fully executed); Solaia Tech. LLC v. ArvinMeritor, Inc., No. 1:02-cv-04704, 2006 U.S. Dist. LEXIS 11347, at *23 (N.D. Ill. Mar. 16, 2006) (holding that a similar provision unambiguously evidenced an intent to be bound only upon the execution of a signed agreement).

Such provisions are especially important in a case such as this, in which several of the parties are corporate entities. It is well-settled that "a corporation may appear in the federal courts only through licensed counsel." Rowland v. California Men's Colony, 506 U.S. 194, 201–02 (1993). The same is true of limited liabilities companies. See Vick v. Wong, 263 F.R.D. 325, 328 n.1 (E.D. Va. 2009) (noting that "a limited liability company . . . cannot appear pro se, even if represented by one of its members, but must be represented by an attorney"). This rule has been applied to preclude any action or motion filed by a corporate entity purporting to act pro se. See, e.g., Olawole v. ActioNet, Inc., 258 F. Supp. 3d 694, 701–02 (E.D. Va. 2017) (dismissing a consulting company's claims because the company was not represented by counsel). Courts have likewise held that "[a] corporation cannot execute a stipulation of settlement while appearing pro se in federal court," and that "a stipulation executed without an attorney is a nullity." Grace v. Rosenstock, No. 1:85-cv-02039, 2004 U.S. Dist. LEXIS 29654, at *20 (E.D.N.Y. Oct. 4, 2004), aff'd, Grace v. Bank Leumi Trust Co., 443 F.3d 180, 192 (2d Cir. 2006) (noting that "[p]laintiffs do not cite any case law supporting the proposition that

corporations may negotiate settlements pro se"); see also Sealand v. Calculated Commodities, LLC, No. 1:16-cv-23626, 2016 U.S. Dist. LEXIS 180502, at *2 (S.D. Fla. Dec. 29, 2016) (holding that a corporate defendant could not "participate in the Settlement Agreement" until it retained counsel and therefore denying the plaintiff's motion to enforce the agreement with respect to that defendant); Glock, Inc. v. Maxsell Corp., No. 4:12-cv-0113, 2013 U.S. Dist. LEXIS 193472, at *16 (N.D. Ga. Apr. 18, 2013) (holding that a consent judgment submitted in accordance with a purported settlement agreement was unenforceable as a matter of law because it was signed by a corporate representative instead of an attorney). These decisions support the conclusion that the oral agreement purportedly reached in this case is unenforceable, and that no settlement would be binding until a written agreement was prepared by counsel and executed by all required signatories.

This conclusion is further bolstered by the "Settlement Payment" provision of the draft agreement and the fact that no payments have been made by the defendants. Although Flint's declaration indicates that the parties agreed that the defendants would "pay Innotec $700,000 as an initial settlement payment by Friday, February 23, 2018," Flint Decl. ¶ 3, the record reveals that no payment was made on that date or any date thereafter. See Pl.'s Resp. to Defs.' Mot. to Enforce Settlement Agreement 30 (noting that Innotec has not received any settlement funds). Instead, defense counsel forwarded plaintiff's counsel the draft agreement on February 23, 2018. Rather than requiring that an initial settlement payment be made on that date, the draft agreement linked the date of the initial settlement payment to the date the proposed agreement was executed by all required signatories. Such evidence reinforces the conclusion that the parties did not intend to be bound until a written agreement was fully executed. Because a written settlement

agreement was never executed, "there is no enforceable settlement agreement between the parties." Saza, 2012 U.S. Dist. LEXIS 19920, at *17-18.

Finally, it is clear from the many additional provisions included in the draft agreement that the parties did not reach an oral agreement on all material terms. See Strawbridge v. Sugar Mt. Resort, Inc., 152 F. App'x 286, 291 (4th Cir. 2005) ("A court should enforce a settlement agreement when the parties have agreed on all material terms."). Such additional terms include extensive release provisions applicable to each side, a provision cancelling previous contracts between the parties, confidentiality and nondisparagement provisions, a provision requiring the plaintiff to convey disputed tools and equipment to another entity, and a provision prohibiting the plaintiff from soliciting or doing business with the defendants' customers for a two-year period. Because it cannot be said that the parties reached a complete and final agreement during the ex parte telephone conversations, the alleged oral agreement is not enforceable.

For all of these reasons, the defendants' motion to enforce settlement agreement will be denied.[5]

## II.    Defendants' Motion to Stay Proceedings and Plaintiff's Motion for Sanctions

Defendants also moved to stay further proceedings, including discovery, pending a ruling on the motion to enforce settlement agreement. In light of the court's ruling on that motion, the motion for stay will be denied as moot, and the defendants will be given ten (10) business days to respond to all outstanding discovery requests, including those identified in Judge Hoppe's February 12, 2018 order. If the defendants do not comply with their discovery obligations, the

---

[5] In passing, the court notes that it appears from the briefs that both sides remain willing to pursue additional settlement negotiations. Upon joint request, the court will refer the case to a magistrate judge or other designated neutral for the conduct of a settlement conference or mediation, in accordance with the discovery plan adopted on October 25, 2017 and Local Civil Rule 83.

13

plaintiff may pursue sanctions against the defendants. The pending motion for sanctions will be denied without prejudice to renewal.[6]

## Conclusion

For the reasons stated, the defendants' motion to enforce settlement agreement and stay proceedings will be denied, and the plaintiff's motion for sanctions will be denied without prejudice to renewal.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 18th day of May, 2018.

                                               /s/ Glen Conrad
                                       Senior United States District Judge

---

[6] The defendants moved to strike the supplemental brief filed in support of the plaintiff's motion for sanctions. That motion will be denied as moot.