IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| INNOTEC LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| VISIONTECH SALES, INC., et al., ) | |
| ) | Civil Action No. 3:17CV00007 |
| Defendants. ) | |
| ) | **MEMORANDUM OPINION** |
| ) | |
| VISIONTECH SALES, INC., ) | |
| ) | By: Hon. Glen E. Conrad |
| ) | Senior United States District Judge |
| Counterclaim Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| INNOTEC, et al., ) | |
| ) | |
| Counterclaim Defendants. ) | |

This case is presently before the court on the defendants' motion for partial judgment on the pleadings, partial summary judgment, or, in the alternative, to compel arbitration as to Count I of the plaintiff's complaint. For the following reasons, the court concludes that Count I must be arbitrated. Accordingly, the court will grant the defendants' motion to compel arbitration and deny without prejudice its motion for partial judgment on the pleadings or for partial summary judgment with respect to that count.

## Background

### I. The Parties

Plaintiff Innotec LLC ("Innotec") is a Colorado limited liability company based in Lafayette, Colorado that manufactures and supplies electrical and mechanical components. Allen Ting, a Colorado resident, is the managing member of Innotec. Defendant Visiontech

Sales, Inc. ("Visiontech") is a Virginia corporation based in Troy, Virginia that purchases electrical and mechanical components.[1] The founder, chief executive officer, and owner of Visiontech is Richard Perrault, a Florida resident. Perrault is also the owner of Visiontech Sales Group Hong Kong, Ltd. ("VSG HK"), a related entity based in Hong Kong.

## II. Innotec's Complaint and the Agreement on which Count I is Based

On February 1, 2017, Innotec filed the instant action against Visiontech, VSG HK, and Perrault, seeking to obtain payment for products ordered from Innotec. The complaint contains five counts: (1) "Breach of Contract by Visiontech – For the sale of goods pursuant to the Exclusivity Agreement"; (2) "Breach of Contract by Visiontech – Unpaid invoices for the sale of goods and open purchase orders"; (3) "Unjust Enrichment against Visiontech"; (4) "Breach of Contract by VSG HK"; and (4) "Personal Liability against Owners of Visiontech and VSG HK." Compl. 8-12, Docket No. 1.

The first count is the subject of the instant motion. In Count I, Innotec alleges that Visiontech breached the terms of an Exclusivity Agreement by failing to pay two invoices issued by Innotec for goods sold under the agreement:

> In the Exclusivity Agreement, Visiontech, as "Buyer," and Innotec, as "Seller," agreed to enter into an exclusive agreement for the purchase of all Vivoplay Charge Adapters .... The terms of such purchases are to be in accordance with the Seller's quotation dated March 28, 2013. Payment is required by wire or by check to the order of Innotec as further set forth therein. Should the Buyer fail to pay for the goods when due, the Seller has the option to treat such failure as a material breach of the Exclusivity Agreement, and seek legal remedies.
>
> The Exclusivity Agreement also provides that in the event of a dispute related to the agreement, the unsuccessful party shall pay to the successful party, in additional to all sums that either party

---

[1] In their respective filings, the parties sometimes refer to Visiontech as "VSG." To avoid confusion, the court will always refer to this defendant as "Visiontech." When quoting from such documents, the court will make the appropriate substitution without using brackets.

> may be called on to pay, a reasonable sum for the successful party's attorney fees . . . .
>
> In reliance on the Exclusivity Agreement, Visiontech made two orders of Vivoplay Charger Adapters from Innotec. Innotec filled such orders, and delivered such goods to Visiontech, and they were accepted by Visiontech without protest and are conforming in all material respects. Innotec has in turn delivered two invoices for payment . . . .
>
> Notwithstanding the above facts and obligations, Visiontech has failed to make payment of the invoices, and is therefore in breach of contract, including the terms of the Exclusivity Agreement.

Id. at ¶¶ 14-17. Based on the foregoing allegations, Innotec seeks to recover the amounts due under the invoices, as well as "its attorneys' fees incurred herein." Id. at 9.

Innotec submitted a copy of the Exclusivity Agreement as an exhibit to the complaint. The Exclusivity Agreement indicates that it was "made effective as of March 28, 2013, between Innotec Energy Systems LLC . . . ('Seller'), and Visiontech Sales, Inc. . . . ('Buyer')." Compl. Ex. B at 1, Docket No. 1-2. The agreement later identifies the "Seller" as "Innotec Advance Energy Systems LLC" ("Innotec AES"). Id. at 4. Allen Ting, who is identified in the Exclusivity Agreement as the General Manager of Innotec AES, signed the agreement on behalf of that entity. Richard Perrault signed the agreement on behalf of Visiontech.

The Exclusivity Agreement includes an arbitration clause on which the pending motion to compel is based. The clause provides, in pertinent part, that "[a]ny controversies or disputes arising out of or relating to this Agreement shall be resolved by binding arbitration in accordance with the then-current Commercial Arbitration Rules of the American Arbitration Association." Id. at 3. The clause further provides that "[t]he agreement to arbitration shall be specifically enforceable under the prevailing arbitration law," that "[t]he decision rendered by the arbitrator(s) shall be final and binding on the parties," and that "judgment may be entered in conformity with the decision in any court having jurisdiction." Id.

3

## III. Subsequent Procedural History

On March 16, 2017, the defendants answered Innotec's complaint, and Visiontech filed a counterclaim against Innotec and Ting. Although the defendants denied certain allegations underlying Count I in their answer, they did not raise arbitration as an affirmative defense to Count I. Nor did they assert as a defense that Innotec cannot recover under the Exclusivity Agreement because it was not a party to that particular contract.

Innotec and Ting subsequently moved to dismiss the counterclaim filed by Visiontech. The parties appeared before the court for a hearing on the motion on September 21, 2017. During the hearing, the defendants, through counsel, expressed the desire to amend the answer, defenses, and counterclaim. By order entered September 22, 2017, the court referred the pending motion to dismiss to United States Magistrate Judge Joel C. Hoppe, pursuant to 28 U.S.C. § 636(b)(1)(B), and directed the defendants to file any motion to amend the answer, defenses, and counterclaim within fourteen days. The defendants moved to amend within the allotted time period. The proposed amended pleading includes the following additional defenses:

> Lack of Standing.
>
> Plaintiff Innotec, LLC is not a party to or a signatory to the so-called Exclusivity Agreement and has no standing to assert any claims or defenses based on or arising under the Exclusivity Agreement.
>
> Arbitration.
>
> The Exclusivity Agreement contains a binding, mandatory arbitration clause requiring private, binding arbitration of all disputes arising under or relating to that Agreement.

Proposed Am. Defenses ¶¶ 11-12, Docket No. 53-2.[2]

---

[2] The magistrate judge has issued a report in which he recommends that the court grant the defendants' motion to amend their answer and defenses to Innotec's complaint. Innotec did not object to the magistrate judge's report. Consequently, by separate order, the court will adopt that recommendation.

4

In the meantime, the parties engaged in discovery, which led to a series of disputes that ultimately resulted in various motions. For instance, on December 22, 2017, Innotec filed a motion for enlargement of time to designate experts on the basis that the defendants had failed to cooperate during the discovery process. On January 16, 2018, Innotec moved to compel the defendants to provide proper and complete discovery responses. The discovery motions and other nondispositive pretrial matters were also referred to Judge Hoppe. By order entered February 12, 2018, Judge Hoppe granted Innotec's motion to compel and directed the defendants to respond to the discovery requests at issue no later than February 22, 2018. Judge Hoppe also granted Innotec's motion for enlargement of time to designate experts.

The defendants did not comply with Judge Hoppe's February 12, 2018 order. They maintained that compliance was no longer necessary because the parties reached an oral settlement agreement on February 21, 2018, the day before their discovery responses were due. On March 2, 2018, the defendants moved to enforce the alleged oral settlement agreement and to stay further proceedings, including discovery, until the court ruled on the defendants' motion. That same day, Innotec moved for sanctions, including involuntary dismissal of Visiontech's counterclaim, based on the defendants' failure to comply with the discovery order. In response, the defendants argued that sanctions were unwarranted because the case had settled. On May 18, 2018, the court issued a memorandum opinion and order in which it declined to enforce the alleged oral settlement agreement and therefore denied the defendants' motion. The court also denied without prejudice Innotec's motion for sanctions. The defendants have since filed supplemental responses to Innotec's discovery requests in accordance with Judge Hoppe's February 12, 2018 order. See Defs.' Suppl. Responses to Feb. 12, 2018 Disc. Order, Docket No. 128.

On March 9, 2018, before the court ruled on the aforementioned motions, the defendants filed the instant motion for partial judgment on the pleadings, partial summary judgment, or, in the alternative, to compel arbitration as to Count I of Innotec's complaint. In seeking judgment on the pleadings or summary judgment, the defendants argue that Innotec does not have standing to sue under the Exclusivity Agreement because it was not a party to that contract. Alternatively, the defendants argue that Innotec cannot seek to enforce contractual obligations arising from the Exclusivity Agreement without complying with the arbitration provision contained therein. In the event that the court declines to grant judgment on the pleadings or summary judgment as to Count I, the defendants contend that Innotec's claims under the Exclusivity Agreement "should be severed and referred to arbitration as the Exclusivity Agreement expressly mandates." Defs.' Reply Br. 5, Docket No. 116. Innotec opposes the defendants' motion in all respects. The motion has been fully briefed and is ripe for review.

## Discussion

### I. Motion to Compel Arbitration of Count I

Under existing caselaw, the court must first consider the defendants' motion to compel arbitration as to Count I of the complaint. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, governs the rights and responsibilities of the parties with respect to an arbitration agreement. Patten Grading & Paving Inc. v. Skanska U.S. Bldg., Inc., 380 F.3d 200, 204 (4th Cir. 2004) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). The Supreme Court has interpreted the FAA to reflect "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp., 460 U.S. at 24. Section 2 of the Act "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218

6

(1985) (quoting 9 U.S.C. § 2). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Id. (emphasis in original) (citing 9 U.S.C. §§ 3, 4). Accordingly, "a court should address the arbitrability of the plaintiff's claim at the outset of the litigation." Reyna v. Int'l Bank of Commerce, 839 F.3d 373, 378 (5th Cir. 2016).

In deciding a motion to compel arbitration, the court's "role is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 478 (9th Cir. 1991). "Thus, after a motion to compel arbitration has been filed, the court must 'refrain from further action' until it determines arbitrability." Silfee v. Auto. Data Processing, Inc., 696 F. App'x 576, 577 (3d Cir. 2017) (quoting Sharif v. Wellness Int'l Network, Ltd., 376 F.3d 720, 726 (7th Cir. 2004)). The court "may not alter this sequencing," Id. (citing Dean Witter Reynolds, 470 U.S. at 218), even if the motion is made in the alternative. See id. (holding that the district court erred in ruling on a defendant's motion to dismiss before resolving its motion to compel arbitration); Hawkins v. Fishbeck, No. 3:17-cv-00032, 2017 U.S. Dist. LEXIS 170678, *8 (W.D. Va. Oct. 16, 2017) (Moon, J.) (noting that the court "must consider the motion to compel arbitration before ruling on the motion to dismiss") (citations omitted). For these reasons, the court will first consider the defendants' motion to compel arbitration of Count I.

The United States Court of Appeals for the Fourth Circuit has held that a party can compel arbitration under the FAA if it establishes four elements: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [plaintiff] to

arbitrate the dispute." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (citation and internal quotation marks omitted). In this case, Innotec contests the second element, arguing that, based on the defendants' proposed amended answer to Count I, "the arbitration provision would not apply to this dispute." See Pl.'s Br. in Opp'n 13, Docket No. 110. Innotec alternatively argues that the defendants waived the right to enforce the arbitration provision. For the following reasons, the court finds Innotec's arguments unpersuasive.

### A. Enforceability of the Arbitration Provision

In its first argument, which is somewhat difficult to follow, Innotec appears to suggest that by asserting that Innotec lacks standing to sue under the Exclusivity Agreement, the defendants are barred from enforcing the agreement's arbitration provision against Innotec. This argument is without merit for at least three reasons. First, "[e]ven if arbitration were inconsistent with other defenses [raised by the defendants], Rule 8(d)(3) provides that a 'a party may state as many separate claims or defenses as it has, regardless of consistency.'" Traxys N. Am. LLC v. Evraz Claymont Steel, Inc., No. 1:09-cv-00684, 2011 U.S. Dist. LEXIS 52041, at *4 (D. Del. May 16, 2011) (quoting Fed. R. Civ. P. 8(d)(3)).

Second, the Supreme Court has made clear that "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 70 (2010). The court must "treat an arbitration clause as severable from the contract in which it appears and enforce it according to its terms unless the party resisting arbitration specifically challenges the enforceability of the arbitration clause itself." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 301 (2010). Here, rather than contesting the validity of the arbitration clause itself, Innotec cites to the defendants' own arguments challenging Innotec's ability to enforce other provisions of the Exclusivity Agreement. Such arguments, however, which bear on the final

8

disposition of the underlying dispute, are properly reserved for the arbitrator and do not preclude enforcement of the arbitration provision. See Muriithi v. Shuttle Express, Inc., 712 F.3d 173, 184 (4th Cir. 2013) ("In view of its gatekeeping function, the scope of a motion to compel arbitration is restricted to consideration of challenges specific to the arbitration clause. Absent a contrary agreement by the parties, general contract defenses that are applicable to the entire contract . . . are reserved for the forum in which the dispute ultimately will be resolved."); Dockser v. Schwartzberg, 433 F.3d 421, 425 (4th Cir. 2006) ("The Supreme Court has instructed that 'procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide.'") (emphasis in original) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)); Jeske v. Brooks, 875 F.2d 71, 75 (4th Cir. 1989) ("Because the alleged defects pertain to the entire contract, rather than specifically to the arbitration clause, they are properly left to the arbitrator for resolution.").

Third, under the circumstances presented, the fact that Innotec is not a signatory to the Exclusivity Agreement does not preclude Visiontech from enforcing the arbitration clause against Innotec. "While a contract cannot bind parties to arbitrate disputes they have not agreed to arbitrate, 'it does not follow . . . that under the [Federal Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision.'" Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416 (4th Cir. 2000) (alteration in original) (quoting Fisser v. Int'l Bank, 282 F.2d 231, 233 (2d Cir. 1960)). Instead, "[w]ell-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." Id. at 416-17 (emphasis added).

One such situation exists when a nonsignatory is equitably stopped from arguing that it is not a party to the arbitration clause. "Equitable estoppel precludes a party from asserting rights

9

he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." Id. at 417-18 (citation and internal quotation marks omitted). "In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." Id.

Applying these concepts, the Fourth Circuit has "held more specifically that '[a] nonsignatory is estopped from refusing to comply with an arbitration clause when it [is seeking or] receives a direct benefit from a contract containing an arbitration clause.'" R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc., 384 F.3d 157, 161 (4th Cir. 2004) (alteration in original) (quoting Int'l Paper Co., 206 F.3d at 418). This test "recognizes that a nonsignatory should be estopped from denying that it is bound by an arbitration clause when its claims against the signatory 'arise[] from' the contract containing the arbitration clause." Am. Bankers Ins. Grp. v. Long, 453 F.3d 623, 628 (4th Cir. 2006) (quoting R.J. Griffin, 384 F.3d at 162). "A nonsignatory's claims 'arise from' a contract containing an arbitration provision when the claims seek to enforce rights contained in that contract." Thomas v. Progressive Leasing, No. 1:17-cv-01249, 2017 U.S. Dist. LEXIS 176515, at *8 (D. Md. Oct. 25, 2017); see also Int'l Paper Co., 206 F.3d at 418 (holding that the plaintiff could not seek to enforce rights provided under a contract and avoid the contract's arbitration clause). Because the test examines the nature of the nonsignatory's allegations against the signatory, the court must examine the underlying complaint to determine whether estoppel should apply. Am. Bankers Ins. Grp., 453 F.3d at 627.

In this case, it is clear from the complaint that the claims for breach of contract asserted in Count I arise from the Exclusivity Agreement containing the arbitration provision. The count is labeled "Breach of Contract by Visiontech – For the sale of goods <u>pursuant to the Exclusivity</u>

10

Agreement." Compl. 8 (emphasis added). The count incorporates by reference the paragraphs preceding it, several of which describe the "Exclusivity Agreement and related purchases." Id. at 5. In paragraph 14, Innotec references several terms of the Exclusivity Agreement, including the provision requiring that all purchases of Vivoplay Charger Adaptors be made in accordance with the terms of the Seller's quotation dated March 28, 2013, the provision requiring that payment be made by wire transfer or business check when due in accordance with the Seller's quotation, and the provision stating that the failure to pay for goods when due may be treated as a material breach of the Exclusivity Agreement by the Seller. Id. at ¶ 14. In paragraph 15, Innotec cites to the provision of the Exclusivity Agreement that permits a successful party to recover attorney's fees in the event that any lawsuit is filed in relation to the agreement. Id. at ¶ 16. In paragraph 16, Innotec alleges that Visiontech made two orders of Vivoplay Charger Adapters "[i]n reliance on the Exclusivity Agreement," and that Innotec filled the orders. Id. at ¶ 16. In paragraph 17, Innotec alleges that Visiontech "has failed to make payment of the invoices, and is therefore in breach of contract, including the terms of the Exclusivity Agreement." Id. at ¶ 17 (emphasis added). Consistent with the terms of the Exclusivity Agreement, Innotec alleges that Visiontech's actions constitute a "material breach of contract," and that it is entitled to recover the attorneys' fees incurred in bringing the instant action, as well as the amounts due for products supplied under the agreement. Id. at ¶ 18; see also id. at 9.

Despite having sued to enforce various terms of the Exclusivity Agreement, Innotec now contends that it should not be bound by the arbitration provision, which broadly covers "[a]ny controversies or disputes arising out of or relating to this Agreement." Compl. Ex. B. at 3; see also Pl.'s Br. in Opp'n 13-14 (suggesting that the Exclusivity Agreement is "immaterial" to this dispute and that its arbitration provision should not apply). Such an attempt to "claim the benefit of the contract and simultaneously avoid its burdens" is the very situation that the doctrine of

equitable estoppel seeks to prevent. Int'l Paper Co., 206 F.3d at 418. By seeking to enforce particular terms of the Exclusivity Agreement and asserting claims that must be determined by reference to the agreement, Innotec is equitably stopped from denying that it is bound by the arbitration provision contained therein.

To the extent that Innotec also argues that the arbitration provision, if binding on it, does not cover the claims asserted in Count I, the court is unable to agree. The court's conclusion that the claims asserted in Count I arise from the Exclusivity Agreement forecloses any argument that the claims do not fall within the scope of the arbitration provision. Am. Bankers Ins. Grp., 453 F.3d at 630; see also Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir. 1996) (noting that a similarly-worded arbitration provision encompassed "all disputes having a significant relationship to the consulting agreement" in which the provision was contained).

### B. Waiver

Innotec alternatively argues that the defendants waived any right they had to enforce the arbitration provision contained in the Exclusivity Agreement. While this argument presents somewhat of a closer question, the court ultimately concludes that it is without merit.

"Under the FAA, a party may lose its right to compel arbitration if it 'is in default in proceeding with such arbitration.'" Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 702 (4th Cir. 2012) (quoting 9 U.S.C. § 3)). Although this principle of default is "akin to waiver," it is "not identical." Id. "Unlike some waiver doctrines, the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred, and the party opposing arbitration bears a heavy burden to prove default." Id. (citations and internal quotation marks omitted).

For instance, "simply failing to assert arbitration as an affirmative defense does not constitute default of a right to arbitration." Forrester v. Penn Lyon Homes, Inc., 553 F.3d 340, 343 (4th Cir. 2009). "Similarly, delay and participation in litigation will not alone constitute default." Id. However, "a party will default its right to arbitration if it 'so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.'" Id. (alteration in original) (quoting Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 981 (4th Cir. 1985)). "The dispositive determination is whether the opposing party has suffered actual prejudice." Rota-McLarty, 700 F.3d at 702. In making this determination, the court is guided by two factors: "(1) the amount of the delay; and (2) the extent of the moving party's trial-oriented activity." Id. The court will consider each of the relevant factors in turn.

### 1. The amount of the delay

Turning first to the amount of the delay, the defendants filed their motion to compel arbitration of Count I approximately thirteen months after Innotec filed its complaint.[3] The Fourth Circuit has previously held that "a delay of several months, without more, is insufficient to demonstrate the opposing party suffered actual prejudice." Id. at 703 (describing the six-and-half-month delay in the case before it as "relatively short" in comparison to other cases involving the issue). Although the length of delay in this case is somewhat longer than the period at issue in several cases in which the Fourth Circuit has found no inherent prejudice, see id. (collecting cases), it is significantly shorter than the length of delay in two previous cases in which the Fourth Circuit concluded that litigants had waived the right to arbitration. See, e.g., Forrester,

---

[3] In their reply brief, the defendants indicate that they attempted to wait until they were permitted to amend their answer and defenses before moving to compel arbitration, in order to avoid any argument that they waived the right to arbitrate by not raising arbitration as an affirmative defense. While the court has no reason to question the sincerity of this representation, "the moving party's reason for delay is not relevant to the default inquiry under [Fourth Circuit] precedent." Rota-McLarty, 700 F.3d at 702.

13

553 F.3d at 343 (emphasizing that the moving party "waited until the eve of trial to file its motion to compel arbitration," and that, by that time, "over two years of litigation had occurred in which the [plaintiffs] had engaged in extensive pretrial preparations"); Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc., 817 F.2d 250, 252 (4th Cir. 1987) (finding that the defendant's four-and-one-half year delay in moving to compel arbitration supported a finding of actual prejudice).

Moreover, nothing in the record suggests that the thirteen-month delay, in and of itself, caused Innotec to suffer actual prejudice. The Fourth Circuit has made clear that "[m]ere delay, without more, will not suffice to constitute waiver." Maxum, 779 F.2d at 982; see also In re Mercury Constr. Co., 656 F.2d 933, 939 (4th Cir. 1981) (en banc) ("It is only when this delay results in actual prejudice that it may amount to 'default' within the Act."). Accordingly, the length of the delay itself is not sufficient to meet Innotec's heavy burden of proving default.

### 2. The nature and extent of the defendants' litigation activities

The second factor in the prejudice inquiry looks to the nature and extent of the moving party's litigation activities. See Rota-McLarty, 700 F.3d at 704. "[A]s is the case with delay, the movant's participation in litigation activity alone will not suffice, as the dispositive question 'is whether the party objecting to arbitration has suffered actual prejudice.'" Patten, 380 F.3d at 206 (emphasis in original) (quoting MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 249 (4th Cir. 2001)).

Initially, the court must reject Innotec's reliance on the fact that both sides fully briefed its motion to dismiss Visiontech's counterclaim before the defendants moved to compel arbitration. See Pl.'s Br. in Opp'n 15. As the Fourth Circuit explained in Patten, it is inappropriate to consider "activity that the moving party did not initiate in assessing that party's default." Patten, 380 F.3d at 206. Because the referenced motion was filed by Innotec, rather

than the defendants, the court is unable to find that prejudice resulted from the defendants' response in opposition to the motion. See Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc., 683 F.3d 577, 588 (4th Cir. 2012) (holding that the moving party's opposition to motions filed by the plaintiffs could not be relied upon to support a finding of prejudice).

Likewise, the court finds no prejudice arising from the filing of an answer and counterclaim by the defendants. The Fourth Circuit has previously held that a party's filing of an answer or compulsory counterclaim is "not necessarily inconsistent with an intent to pursue arbitration." Patten, 380 F.3d at 206. That is especially true in a case such as this, in which only some, but not all, of the plaintiff's claims are subject to arbitration. Moreover, as in Patten, Innotec "makes no showing of prejudice arising from this aspect of [the defendants'] pre-trial activity." Id.

Innotec's reliance on the discovery conducted in this case is also unavailing. Although the record reveals that the parties have engaged in extensive written discovery and litigated a number of discovery disputes, "mere participation in discovery is not sufficient to indicate default." Rota-McLarty, 700 F.3d at 704. Moreover, the discovery requested by both sides covered a multitude of issues other than those related to the Exclusivity Agreement. In the absence of any assertion that the defendants improperly benefited from conducting discovery prior to filing the instant motion, the court is unable to conclude that the defendants' use of the discovery process caused Innotec to suffer the prejudice required to support a finding of default. See id. (emphasizing that the plaintiff failed to explain how the discovery conducted "would be to [the defendant's] advantage, or unavailable, in arbitration"); Patten, 380 F.3d at 207 (observing that the plaintiff demonstrated "no resulting disadvantage" from the discovery conducted in the case).

15

Finally, the court must reject Innotec's argument that the defendants waived the right to compel arbitration by filing a motion to enforce an alleged oral settlement agreement, which has since been denied by the court. See Pl.'s Br. in Opp'n 16 (questioning "what greater utilization 'of the litigation machinery' could be imagined"). Although whether the nonmoving party was required to respond to a dispositive motion may factor into the prejudice analysis, the Fourth Circuit has counseled against adopting a bright-line rule that the mere filing of a dispositive motion is inherently prejudicial. Rota-McLarty, 700 F.3d at 704 n.15 (citing Wheeling, 683 F.3d at 590). Instead, the nonmoving party must show that "actual prejudice . . . resulted therefrom." Wheeling, 683 F.3d at 590. Here, Innotec merely cites to the fact that the defendants "simultaneously argue[d] that this case ha[d] settled," without offering any explanation as to how it was prejudiced by the filing of the potentially dispositive motion. Pl.'s Br. in Opp'n 16. Consequently, the court is compelled to conclude, on the facts presented, that Innotec has failed to meet its burden of showing actual prejudice. Wheeling, 683 F.3d at 591; cf. Forrester, 553 F.3d at 343 (concluding that the plaintiffs suffered actual prejudice where the defendant's use of the litigation process permitted the defendant to defeat several of the plaintiffs' claims on summary judgment and forced them to reveal their trial strategy); Fraser, 817 F.2d at 252 (reaching the same conclusion where several of the plaintiff's claims were defeated on summary judgment over two years before the defendant demanded arbitration).

For these reasons, the court concludes that the arbitration provision of the Exclusivity Agreement is enforceable against Innotec, that the claims asserted in Count I fall within the scope of the provision, and that the defendants did not waive the right to compel arbitration. Accordingly, the court will grant the defendants' motion to compel arbitration of Count I of the complaint and stay further judicial proceedings with respect to that count. See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709 (4th Cir. 2001) ("[T]he FAA

16

requires a district court . . . to stay judicial proceedings involving issues covered by written arbitration agreements.") (citing 9 U.S.C. § 3). The defendants' alternative motion for judgment on the pleadings or for summary judgment as to Count I will be denied without prejudice to the defendants' right to raise the issues during the arbitration proceedings.

## II. Remaining Claims

The defendants have not moved to compel arbitration as to any other count in the complaint, and neither party has argued or suggested that any of the remaining claims or counterclaims would be subject to arbitration. The Fourth Circuit has recognized that "[e]nforcement of agreements to arbitrate under the Federal Arbitration Act may require piecemeal litigation, and the decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket." Am. Recovery Corp., 96 F.3d at 97; see also Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 558 (4th Cir. 2015) ("We recognize that requiring the parties to litigate in two different forums may be inefficient, and could lead to conflicting results. But this outcome is mandated by the Federal Arbitration Act, which requires piecemeal litigation where, as here, the agreements call for arbitration of some claims, but not others . . . . We leave it to the district court's discretion whether to stay the franchisees' [other] claims pending conclusion of the arbitration.").

Because neither side has addressed how the remaining claims should proceed in the event that the court required arbitration of Count I, the court will permit the parties to submit additional briefing on this issue. Specifically, the parties shall have until August 3, 2018 to file simultaneous briefs addressing the issue of whether the remaining claims should be stayed pending the resolution of the arbitration proceedings related to Count I. See, e.g., Trouard v. Dickey's Barbecue Rests., Inc., No. 8:14-cv-01703, 2016 U.S. Dist. LEXIS 20134, at *3 (D. Md.

Feb. 19, 2016) (addressing whether to stay non-arbitrable claims after having the parties brief the issue).

## Conclusion

For the reasons stated, the defendants' motion to compel arbitration as to Count I will be granted, and their motion for judgment on the pleadings or for summary judgment with respect to that count will be denied without prejudice.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 10th day of July, 2018.

                                                */s/*
                                  Senior United States District Judge